UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

CAVALRY CONSTRUCTION, INC.,

                                              Debtor,

-------------------------------------------------------------X

CAVALRY CONSTRUCTION, INC.,

                                              Plaintiff,

          -v-

WDF, INC., NEW YORK CITY SCHOOL
CONSTRUCTION AUTHORITY, SILVERITE
CONSTRUCTION CO., INC., WDF,
INC./CAVALRY CONSTRUCTION, INC., BAY
CRANE SERVICE, INC. and JOHN DOES 1
through 120,

                                              Defendants,

-------------------------------------------------------------X

NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY,

                                              Appellant,

          -v-

WDF, INC.,

                                              Appellee.

Case No. 09-CV-5123 (KMK)


OPINION AND ORDER

Appearances:

Barbara W. Peabody, Esq.
New York City Law Department, Office of the Corporation Counsel
Bronx, New York
*Counsel for Defendant/Appellant New York City School Construction Authority*

K. Richard Marcus, Esq.
The McDonough Law Firm, LLP
New Rochelle, New York
*Counsel for Defendant/Appellee WDF, Inc.*

KENNETH M. KARAS, District Judge:

Appellant New York City School Construction Authority ("SCA") appeals a final order of the bankruptcy court finding, among other things, that the SCA indemnify Appellee WDF, Inc. ("WDF") for damages WDF owes Debtor Cavalry Construction, Inc. ("Cavalry"), and also finding that the SCA is directly liable to Cavalry on two lien foreclosure actions.  At the threshold, the SCA contends on appeal that the bankruptcy court did not have jurisdiction to adjudicate the indemnity cross-claims, but this Court holds that jurisdiction was proper because bankruptcy courts in the Second Circuit may exercise supplemental jurisdiction over such cross-claims.  On the merits, the Court reverses the judgment of the bankruptcy court on both issues, because, as explained below, (1) the SCA owed no legal duty to Cavalry and so was not liable to WDF on a theory of common-law indemnity, and (2) Cavalry had no direct claims against the SCA because the relevant bonds had been discharged.

<u>I. Background</u>

This appeal concerns work performed on six public works projects (the "Projects"), known as Forsythe H.S., Julia Richman High School, P.S. 127, I.S. 84, P.S. 4 and the Bronx School for Law ("Bronx Law").  (Appellee Br. 1.)  The Projects were constructed for the SCA. (*Id.*)  WDF was awarded contracts by the SCA to perform work on the Projects.  (Appellant Br. 4.)  For all the projects except Bronx Law, Calvary was a subcontractor to WDF.  (Appellee Br. 1.)  For the Bronx Law project, WDF was itself the subcontractor, WDF/Cavalry (the "Joint Venture"), a joint venture, was the second-tier subcontractor, and Cavalry was the third-tier subcontractor.  (*Id.*)

Cavalry filed a voluntary petition for reorganization on or about July 27, 2007, and it commenced the adversary proceeding that ultimately led to this appeal in November 2007.

(Appellant Br. 3.)  The SCA was added to the adversary proceeding in January 2008.  (*Id.*)

On or about November 30, 2007, Cavalry filed notices under Mechanic's Lien Law pertaining to money allegedly owed to it for work performed on the projects.  (*Id.* at 5.)  The mechanic's liens here are "public improvement liens," which are liens against real property that a subcontractor may file with a city when the contractor does not pay the subcontractor for work on a public improvement project; when the lien is filed, the city withholds payment from the contractor.  *See generally* N.Y. Lien Law, art. 2; *see also* New York City Dep't of Finance, "Public Improvement Lien," http://www.nyc.gov/html/dof/html/business/ services_vendors_liens.shtml (last visited May 7, 2013) (New York City website explaining public improvement liens and listing liens filed with the City).  The mechanic's liens filed for money allegedly owed to Cavalry for work performed on the projects were in the amounts of: $24,036.91 (Forsythe H.S.); $442,550.02 (Julia Richman H.S.); $56,420.12 (P.S. 127); $831,299.59 (I.S. 84); $382,295.30 (P.S. 4); and $2,149,066.97 (Bronx Law).  (SCA Letter of May 5, 2010 (Dkt. No. 17), at 1.)

In bankruptcy court, Cavalry brought a breach of contract action against WDF and lien foreclosure actions against WDF and the SCA.  (Appellant Br. 6.)  WDF cross-claimed against the SCA, asserting contract and common law indemnity claims against the SCA for the monies sought from it by Cavalry.  (*Id.*)  These claims were later clarified so that it was clear that WDF was attempting to recover from the SCA only on the theory that the SCA was liable to WDF under the principle of common-law indemnification.  (*See* Tr. of Hr'g 13 (Nov. 10, 2008) *Cavalry Construction, Inc. v. WDF, Inc.* (*In re Cavalry Construction, Inc.*), Adversary No. 07-8318 (Bankr. S.D.N.Y. Apr. 24, 2009) (Counsel for WDF: "Judge, the claim is, if the claim were for breach of contract, perhaps [the SCA] would have something, but the claim is for common

law indemnification.").)[1]  On April 24, 2009, the bankruptcy court, per Judge Adlai S. Hardin, Jr., entered a judgment on WDF's indemnity claims for the Projects in WDF's favor.  (*Id.* at 4; Final Order & J. ("Order") ¶¶ 7, 17, 23, 27, 34, 44.)

Regarding the lien foreclosure claims, the SCA asserted that the liens pertaining to I.S. 84, in the amount of $831,299.59, and P.S. 4, in the amount of $382,295.30, were discharged and that "[t]he SCA was no longer a stakeholder since it was not required to withhold money." (Appellant Br. 5.)  The SCA moved to dismiss the lien foreclosure action on P.S. 4 for this reason, and it renewed its motion at trial with respect to both P.S. 4 and I.S. 84, but those motions were denied.  (*Id.* at 8.)  In the same order that decided WDF's indemnity claims, Judge Hardin found in Cavalry's favor on the lien foreclosure claims against multiple parties, including the SCA.  (Order ¶¶ 34, 44.)

Additionally, in January 2009, WDF asserted breach of contract claims against the SCA in New York state court seeking damages for breach of the contracts relating to I.S. 84 and P.S. 4.  (Appellant Br. 9.)  On or about April 21, 2009, the SCA asked the bankruptcy court "to abstain from exercising jurisdiction" over the claims before it that related to the same projects, and the bankruptcy court denied the SCA's request.  (*Id.*)

The SCA appeals from the bankruptcy court's Order and presents four issues: (1) "Whether the bankruptcy court had subject matter jurisdiction to adjudicate WDF's state law [indemnity] claims against the SCA"; (2) Whether the bankruptcy court was correct on the merits of WDF's indemnity claim; (3) Whether the bankruptcy court should have dismissed "Cavalry's lien foreclosure action against the SCA relating to P.S. 4 and I.S. 84"; and (4) Whether the bankruptcy court was required to "abstain[] from exercising jurisdiction over

---

[1] Hereafter, references to the transcripts from the adversary proceeding below will be cited as [Date of Hearing] Tr. [Page Number].

WDF's claims against the SCA" as a result of WDF's state court action.  (*Id.* at 11.)  This Court answers the questions as follows: (1) the Court affirms that the bankruptcy court had supplemental jurisdiction to hear the indemnity cross-claims; (2) the Court reverses the bankruptcy court on the merits of the indemnity claim, and holds that the SCA is not liable on a common-law indemnity theory to the SCA; and (3) the Court reverses the bankruptcy court on the lien foreclosure issue, and holds that the lien foreclosure claims against the SCA should have been dismissed.  Because of its resolution of the issues in this manner, the Court need not resolve the abstention issue presented in question (4).  The Court also remands the case to the bankruptcy court for further proceedings consistent with this Opinion.

## II. Discussion

### A. Standard of Review

Pursuant to Bankruptcy Rule 8013, a District Court reviews a bankruptcy court's conclusions of law *de novo* and reviews findings of fact for clear error.  Fed. R. Bankr. P. 8013; *see Lubow Machine Co. v. Bayshore Wire Prods. Corp* (*In re Bayshore Wire Prods. Corp.*), 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, [the Court of Appeals] review[s] the Bankruptcy Court's findings of fact for clear error, [and] its conclusions of law de novo . . . ." (internal citations omitted)).

Under the clear error standard, "[t]here is a strong presumption in favor of a trial court's findings of fact if supported by substantial evidence," and a reviewing court "will not upset a factual finding unless [it is] left with the definite and firm conviction that a mistake has been made."  *Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1574 (2d Cir. 1994) (first alteration in original) (internal quotation marks omitted); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) ("[A] finding is clearly erroneous when although there

is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (alteration in original) (internal quotation marks omitted)).

B. The Bankruptcy Court's Jurisdiction

District courts have original bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334, and they may refer such cases to a bankruptcy court pursuant to 28 U.S.C. § 157.  The statute granting original bankruptcy jurisdiction provides:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(a)–(b).  The district courts, therefore, have four types of explicit bankruptcy jurisdiction: they may adjudicate "cases under title 11," "all civil proceedings arising under title 11," all civil proceedings "arising in . . . cases under title 11," and all civil proceedings "related to cases under title 11."  *See id.  See generally* Ralph Brubaker, *On The Nature Of Federal Bankruptcy Jurisdiction: A General Statutory And Constitutional Theory*, 41 Wm. & Mary L. Rev. 743 (2000) (describing historical and current federal bankruptcy jurisdiction).  Each of the four grants of jurisdiction is different, though there is some overlap between the categories of cases federal courts may hear pursuant to their bankruptcy jurisdiction.

First, a case "under title 11" is "'the bankruptcy petition itself.'"  *Enron Corp. v. Citigroup, Inc.* (*In re Enron Corp.*), 353 B.R. 51, 57 (Bankr. S.D.N.Y. 2006) (quoting *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 92 (5th Cir. 1987)).  Second, civil proceedings "arising under title 11" are those in which a party "invokes a substantive right created by federal bankruptcy

law." *Id.*; *see also McCarthy v. Radcliffe* (*In re Radcliffe*), 317 B.R. 581, 589 (Bankr. D. Conn. 2004) (same).  Third, a civil proceeding "arising in" "cases under title 11," is a proceeding "where, even though it is not based on a right expressly created by title 11, it would have no existence outside of bankruptcy."  *Enron Corp.*, 353 B.R. at 57; *see also Bank of Am., N.A. v. Cerberus Capital Mgmt.* (*In re Extended Stay, Inc.*), 418 B.R. 49, 58, (Bankr. S.D.N.Y. 2009) (same) (quoting *Rednel Tower, Ltd. v. Riverside Nursing Home* (*In re Riverside Nursing Home*), 144 B.R. 951, 955 (S.D.N.Y. 1992))); *McCarthy*, 317 B.R. at 589 (same).  Finally, civil proceedings are "related to cases under title 11" if the outcome of those proceedings "'in any way impacts upon the handling and administration of the bankrupt estate.'"  *Enron Corp.*, 353 B.R. at 57 (quoting *In re Boco Enters., Inc.*, 204 B.R. 407, 410 (Bankr. S.D.N.Y. 1997) and citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

The question here is whether bankruptcy courts in the Second Circuit have another source of jurisdiction: the general grant of supplemental federal jurisdiction provided by 28 U.S.C. § 1367(a).  That provision states: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."  28 U.S.C. § 1367(a).  This is the source of jurisdiction that Judge Hardin invoked over the indemnity cross-claims, and the SCA argues on appeal that this invocation was error because bankruptcy courts may not invoke the supplemental jurisdiction statute.  As explained below, binding law from the Second Circuit holds that Judge Hardin's use of supplemental jurisdiction was proper.

The bankruptcy court concluded that it had "supplemental jurisdiction with respect to WDF's claims against the SCA based on . . . a common-law right of indemnification."[2]  (Order ¶ 6.)  The Order references portions of the transcript where Judge Hardin made the oral rulings that were later formalized in the Order:

> The Court . . . [,] at the very least[, has] supplementary jurisdiction with respect to WDF's claim over against the SCA whether that claim is based on contract or a common law right of indemnification. . . .
> [A]s far as the jurisdiction over the entitlement . . . of WDF, the prime contractor or the general contractor against the SCA, that is exactly what the SCA says that Cavalry has the burden to prove.  How can there not be not only related to jurisdiction but core jurisdiction when the SCA repeatedly states — and I think correctly — that Cavalry has the burden of proving that money was due to WDF from the SCA[?]  How can that burden be carried if the Court doesn't have jurisdiction over that issue[?]
> Furthermore, the question of Cavalry's claims against WDF is inextricably linked or intertwined with the question of SCA's obligation to the prime contractor.

(Jan. 27, 2009 Tr. 59, 61.)

On appeal, the SCA challenges Judge Hardin's exercise of supplemental jurisdiction over the indemnity cross-claims, because, according to the SCA, bankruptcy courts may not exercise supplemental jurisdiction in the same way that federal district courts may in all other civil cases. The "consensus" among courts, states the SCA, "is that the outer reaches of the [jurisdiction of the] bankruptcy court is 'related to' jurisdiction, pursuant to 28 U.S.C. § 157, and that supplemental jurisdiction cannot be used to extend the court's jurisdiction over claims that are not otherwise within the court's jurisdictional grant."  (Appellant Br. 15–16.)  But, regardless of the "consensus" view of supplemental bankruptcy jurisdiction, this Court is bound by the Second Circuit's view of the matter, which is that bankruptcy courts may invoke the supplemental

_____

[2] Here and elsewhere, quotations from the bankruptcy court or the Parties' briefs have been altered to reflect the naming conventions of the Parties used in this Opinion.

8

jurisdiction of § 1367. *See Klein v. Civale & Trovato, Inc.* (*In re Lionel Corp.*), 29 F.3d 88, 92 (2d Cir. 1994).

In *Lionel*, a subcontractor, CTI, did construction work on behalf of a company called Lionel; Lionel, in turn, had leased the property from the Owners. *Id.* at 90. CTI claimed that Lionel did not pay it for work performed, and CTI filed a Notice of Mechanic's Lien against the premises. *Id.* Then, in a bankruptcy proceeding, both Lionel, as debtor, and the Owners, in a third-party claim, urged the bankruptcy court to invalidate the lien. *Id.* The bankruptcy court did so, and the district court affirmed. *Id.* at 90–91. On appeal to the Second Circuit, CTI argued that "its lien should not be subject to the automatic stay provision of the Bankruptcy Code because the stay only protects property of the debtor, Lionel, and its lien was filed against property of the Owners" — an argument CTI had not pressed below. *Id.* at 91–92. CTI urged the Second Circuit to address the argument anyway, because it "calls into question the bankruptcy court's subject matter jurisdiction." *Id.* at 92.

The Second Circuit rejected the idea that the bankruptcy court's subject matter jurisdiction was implicated, and it refused to consider the argument. *Id.* In so doing, the court stated that "[t]he Owners' suit against Lionel sought to enforce Lionel's obligation under the lease to cause any mechanic's lien filed against the premises to be discharged by payment, deposit, bond, order of court, or otherwise. As such, it was a core proceeding which the bankruptcy court was authorized to hear and determine under 28 U.S.C. § 157(b)(2)(G)." *Id.* Crucially, the Second Circuit then went on to state that "[t]he bankruptcy court had jurisdiction over the Owners' claims against CTI under principles of supplemental jurisdiction." *Id.* (citing 28 U.S.C. § 1367). That final sentence, which explicitly invoked the supplemental jurisdiction of § 1367, is a binding statement from the Second Circuit that bankruptcy courts within the

Circuit may invoke supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate third-party claims that may be best handled in the same venue as a bankruptcy proceeding.

While the SCA is correct that several courts outside of the Second Circuit have held that bankruptcy courts may not exercise supplemental jurisdiction under § 1367, *see Walker v. Cadle Co.* (*In re Walker*), 51 F.3d 562, 573 (5th Cir. 1995) (concluding that "it would be somewhat incongruous to gut this careful system [of 'core' and 'non-core' bankruptcy court jurisdiction] by allowing bankruptcy courts to exercise supplemental jurisdiction"), those cases do not represent the best view of the law in *this* Circuit.  For example, in a thoughtful (and recent) opinion on the issue, Southern District of New York Bankruptcy Judge Bernstein admitted that if he "were asked to write on a clean slate [he] would conclude that [the bankruptcy court] lacks supplemental jurisdiction for the reasons expressed by the Fifth Circuit Court of Appeals in *Walker*."  *Gowan v. HSBC Mortg. Corp.* (*In re Dreier LLP*), No. 08-15051, 2012 WL 4867376, at *5 (Bankr. S.D.N.Y. Oct. 12, 2012).  But Judge Bernstein then noted that he was not writing on a blank slate; rather, he stated that "the Second Circuit Court of Appeals has ruled that a bankruptcy court may acquire jurisdiction over a dispute between third parties under the principles of supplemental jurisdiction.  Under the circumstances, the Court is constrained to conclude it may exercise supplemental jurisdiction over [cross-claims asserted by one non-debtor against another]."  *Id.* (citing *Lionel*, 29 F.3d at 92); *see also McCarthy*, 317 B.R. at 590 ("[T]he Second Circuit Court of Appeals has interpreted 28 U.S.C. § 1367(a) to confer supplemental jurisdiction . . . on the bankruptcy courts as well as the district courts." (citing *Lionel*, 29 F.3d at 92)).[3]

_____

[3] Perhaps because the bankruptcy court in *Dreier* did not ultimately exercise jurisdiction over the cross-claims at issue, that court did not address whether a bankruptcy court's exercise of jurisdiction and entry of final judgment on such claims would run afoul of Article III under the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  But even if the

The SCA relies heavily on another bankruptcy court case within this Circuit, *In re Enron Corp.*, which held that bankruptcy courts within the Second Circuit could not exercise supplemental jurisdiction. *See* 353 B.R. at 61. But, with due respect, the court in *Enron* misconstrued *Lionel*, perhaps in an understandable attempt to put the courts in this Circuit in line with what appears to be the majority view.[4]

In *Enron*, the bankruptcy court reasoned that the key sentence in *Lionel* invoking § 1367 did not definitively hold that bankruptcy courts may exercise supplemental jurisdiction because "[t]he reference [in *Lionel*] to section 1367 was not a reference to the direct application of supplemental jurisdiction under section 1367. Rather it was a reference to 'principles' of supplemental jurisdiction." 353 B.R. at 61. Further, according to the *Enron* court, the Second Circuit's statement in *Lionel* was merely dictum, because "the bankruptcy court had jurisdiction over the owners' claim against the contractor" pursuant to "arising under" jurisdiction, so "it was not necessary for the Court to address the issue of whether there was supplemental jurisdiction under 28 U.S.C. § 1367." *Id.* at 62.

_____

bankruptcy court here were without power to enter final judgment under *Stern*, this Court could treat the judgment as a report and recommendation from the bankruptcy judge subject to de novo review in this Court. *See Retired Partners of Coudert Bros. Trust v. Baker & McKenzie LLP* (*In re Coudert Bros. LLP*), No. 11-CV-2785, 2011 WL 5593147, at *13 (S.D.N.Y. Sept. 23, 2011) ("[T]here is no reason not to treat what [the bankruptcy judge] thought was a 'final' determination dismissing the Claims as a report and recommendation of dismissal, which [the district court] will review de novo."). And, because the issue of the SCA's liability for indemnification is entirely one of law, it is subject to de novo review under either framework. *See supra*. Thus, even if the bankruptcy court did not have the *constitutional* power to enter judgment on these claims, this Court's analysis upon reviewing the decision is identical.

[4] It is worth nothing that the Ninth Circuit also has held that bankruptcy courts may exercise supplemental jurisdiction. *See Montana v. Goldin* (*In re Pegasus Gold Corp.*), 394 F.3d 1189, 1194–95 (9th Cir. 2005) (holding that the bankruptcy court does have supplemental jurisdiction when the "claims involve a 'common nucleus of operative facts'").

The *Enron* court's reasoning is a valiant attempt to limit *Lionel*, but it is ultimately unpersuasive.  First, the postulated difference between the "direct application of supplemental jurisdiction under 1367" and "'principles' of supplemental jurisdiction" is in fact no difference at all.  As the Supreme Court has stated, "[f]ederal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Especially after the passage of § 1367 in 1990, which "combine[d] the [earlier-developed] doctrines of pendent and ancillary jurisdiction under a common heading," *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997), it is not clear what "principles" of supplemental jurisdiction the *Enron* court was referring to, or how those principles exist unmoored from the statute itself.  Section 1367, after all, describes the scope of the federal courts' supplemental jurisdiction.  The Second Circuit's extension of § 1367 in *Lionel* to cases and proceedings in bankruptcy courts can mean only one thing: supplemental jurisdiction pursuant to § 1367 applies there too.

This reading of *Lionel* is also a logical extension of the Second Circuit's prior decision in *Publicker Indus. Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 115 (2d Cir. 1992).  In *Cuyahoga*, the Second Circuit addressed the question whether a district court had supplemental jurisdiction to approve a settlement that affected claims clearly within a bankruptcy court's "related to" jurisdiction.  *Id.* at 114–15.  The Second Circuit held that a district court had such power, reasoning that "[g]iven an independent jurisdictional source like that provided by § 1334(b), [which grants federal courts "related to" bankruptcy jurisdiction], federal courts possess supplemental jurisdiction over related claims."  *Id.* at 115 (citing 28 U.S.C. § 1367(a)).  Though that case is not on all fours with this one, because in *Cuyahoga* the district court had withdrawn the reference to the bankruptcy court, *id.* at 113, it would make little

sense for *district* courts to have the power to exercise supplemental jurisdiction in bankruptcy matters but for the bankruptcy courts themselves not also to have such power.  Thus, it seems clear that *Lionel* is consistent with *Cuyahoga*.  *See* Brubaker, *supra*, 41 Wm. & Mary L. Rev. at 926 n.637 (citing *Cuyahoga* for the proposition that "the bankruptcy jurisdiction statute and the supplemental jurisdiction statute, in combination, would appear to give the federal district courts supplemental bankruptcy jurisdiction").  A contrary reading, by contrast, creates an unwarranted distinction between the bankruptcy court's supplemental jurisdiction and the district court's supplemental jurisdiction.  *See id.* at 927 ("Given the fact that bankruptcy litigation, as a practical matter, occurs in the bankruptcy courts and not in the district courts, supplemental bankruptcy jurisdiction will be an effective jurisdictional medium only to the extent that it can be employed in the bankruptcy courts.").

Second, even if the statement in *Lionel* was dictum in some sense, "as a general principle, a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of dictum." *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 209 (E.D.N.Y. 2007); *see also United States v. Oshatz*, 912 F.2d 534, 540 (2d Cir. 1990) (While "not every observation contained in an opinion of [the Second Circuit] deserves to be regarded as the law of this Circuit, . . . in some contexts expressions of views by an appellate court must be regarded as the law of the circuit, even though not an announcement of a holding or even of a necessary step in the reasoning leading to a holding.").  Here, at very least, the key sentence in *Lionel*, which cited directly to § 1367, was a considered pronouncement that should be abandoned only when faced with a compelling argument to the contrary.  None presents itself in this case.

In sum, the Court finds that, though there is an inter-circuit conflict on this issue, this Court is bound by *Lionel*'s holding that bankruptcy courts may exercise supplemental jurisdiction under § 1367(a).  Neither Party argues that, if the Court *did* have supplemental jurisdiction, its exercise of discretion to hear the indemnity claims was improper.  Indeed, as noted previously, exercising jurisdiction over the types of claims at issue here would be quite unremarkable.  Because the bankruptcy court properly exercised supplemental jurisdiction, the Court need not decide today whether the claims here fall under "related to" jurisdiction.[5]  Thus, the Court affirms the bankruptcy court's exercise of jurisdiction over the claims here.

---

[5] The lineup of cases weighs against finding "related to" jurisdiction in indemnity disputes.  *See, e.g.*, *Walker*, 51 F.3d at 569 (holding that there was "no conceivable effect on the administration of the estate" regardless of "whether [non-debtor] should be required to reimburse [second non-debtor] for any money [second non-debtor] pays to [debtor]" (internal quotation marks omitted)); *Pearl River Plumbing, Heating & Elec., Inc. v. Pepco* (*In re CRM Int'l, Inc.*), Bankr. No. 04-47594, Adversary No. 05-6271, 2009 WL 1545818, at *3 (Bankr. D.N.J. May 28, 2009) (holding that an indemnification claim for attorney's fees incurred during the bankruptcy proceeding did not give rise to "related to" jurisdiction); *Munding v. LeMaster & Daniels, P.L.L.C.* (*In re Spokane Raceway Park, Inc.*), 392 B.R. 451, 458 (Bankr. E.D. Wash. 2008) (holding that because "the indemnity claim only determines which of two entities would owe money to the estate," "there is no 'related to' jurisdiction" (footnote omitted)); *Rafool v. Goldfarb Corp.* (*In re Fleming Packaging Corp.*), Bankr. No. 03-82408, Adversary No. 04-8166, 2007 WL 4556981, at *3 (Bankr. C.D. Ill. Dec. 20, 2007) ("A bankruptcy court does not have subject matter jurisdiction, even 'related to' jurisdiction, to hear a dispute between a non-debtor third party and that party's insurance company."); *HA2003 Liquidating Trust v. Carramore Ltd.* (*In re Ha-Lo Indus., Inc.*), 330 B.R. 663, 668–69 (Bankr. N.D. Ill. 2005) (holding that a proceeding which "would only determine which party will ultimately be responsible in the event that the Third-Party Plaintiffs are found liable in the underlying Adversary proceeding" was not covered by "related to" jurisdiction because "[t]he distribution of funds to the creditors and the Plan would remain unaffected" as "[t]he amount of money available for distribution to creditors will not change depending on who prevails").

Professor Brubaker argues that claims like those here were designed to be adjudicated in bankruptcy courts under "related to" jurisdiction, but the common test for "related to" jurisdiction, known as the "*Pacor* test," misconstrues "related to" jurisdiction to exclude such actions.  *See* Brubaker, *supra*, 41 Wm. & Mary L. Rev. at 887–921.  But, because it is clear that Congress intended that bankruptcy courts have the discretion to adjudicate such claims, "[s]ubsequent case law has tacitly refused to follow *Pacor*'s disavowal of third-party 'related to' bankruptcy jurisdiction as a grant of supplemental jurisdiction." *Id.* at 921.  On this view, *Lionel* gets to the right result, even if on a different theory.

C. The Indemnity Claims

Following a trial, the bankruptcy court granted judgment to Cavalry against WDF on the lien foreclosure actions.  (Order ¶ 2.)  Exercising its supplemental jurisdiction over the indemnity cross-claims, the bankruptcy court also ordered the SCA to indemnity the WDF for nearly the entire amount that Cavalry was owed.[6]  (*Id.* ¶¶ 17, 23, 27, 34, 44.)  While the exercise of supplemental jurisdiction over these cross-claims was proper, the Court finds that, on the merits, the SCA is not liable to WDF based on a theory of common-law indemnification.

The bankruptcy court's intuition is hard to fault.  In its Order, the bankruptcy court reasoned: "WDF is entitled to be paid by the SCA with respect to those external change order claims (whereby the SCA directed WDF to perform the extra work; WDF, in turn, directed Cavalry to perform such extra work; Cavalry performed the extra work; the SCA accepted and benefitted from the extra work, but refused to pay WDF for such extra work)."  (Order ¶ 7 (party designations altered for clarity).)  The problem is that no action for common law indemnity is available under these circumstances, because the SCA owed no duty to Cavalry.

The SCA argues that a "general contractor cannot recover damages from the owner based on an indemnification theory where the general contractor is sued by the subcontractor for breach of the subcontract."  (Appellant Br. 21.)  This is supported by ample New York authority.  For instance, in *Waldorf Steel Fabricators, Inc. v. Trocom Const. Corp.*, 664 N.Y.S.2d 326 (App. Div. 1997), "Trocom Construction Corp. [("Trocom')], as general contractor, entered into a contract to perform certain street and subway reconstruction work for the New York City Department of Transportation [("DOT")]."  *Id.* at 327.  Then, "Trocom subcontracted the portion

---

[6] For the P.S. 4 project, the one project where the SCA was not ordered fully to indemnify WDF, the bankruptcy court granted judgment for Cavalry in an amount of $284,559.41, and it granted judgement for WDF against the SCA on this claim for $262,654.41. (Order ¶ 44.)  The Parties do not explain the source of this difference on appeal.

of the work involving the fabrication and erection of structural steel to [Waldorf Steel]." *Id.*
Next, there, as here, the property owner altered the work order: "the DOT advised Trocom that it
was exercising its right pursuant to the prime contract to delete . . . that portion of the work
dealing with the fabrication and erection of structural steel." *Id.* But Waldorf Steel, the
subcontractor, had already done some work on the project, so Waldorf Steel sued Trocom "to
recover for work performed and expenses incurred prior to the deletion of the structural steel
work." *Id.* In that suit, Trocom "moved to amend its answer to assert cross claims against its
codefendant, [the DOT], for common-law indemnification and to recover damages for breach of
contract." *Id.* The Second Department affirmed the trial court's denial of Trocom's application
to include the indemnity cross-claim against the DOT on the ground that "the DOT owed no duty
directly to [Waldorf Steel] upon which such an indemnification claim could be based." *Id.* at
328 (citing *Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 517
N.E.2d 1360 (N.Y. 1987) and *Kemron Envt'l. Servs. v. Envt'l Compliance*, 585 N.Y.S.2d 475
(App. Div. 1992)). Thus, *Waldorf* squarely holds that, unless some previously recognized legal
duty exists between a subcontractor and a property owner, a general contractor may not assert a
cross-claim for common-law indemnification against the owner in case the general contractor is
found liable to the subcontractor.

 *Waldorf Steel* is representative of the consensus view of New York courts on this issue.
*See Feinberg v. Katz*, No. 99-CV-45, 2002 WL 1751135, at *18 (S.D.N.Y. July 26, 2002)
(Under New York law, "[t]o find an implied contract for indemnification 'a duty must exist
between the third-party defendant and the primary plaintiff.'" (quoting *Kemron*, 585 N.Y.S.2d at
476)); *Kemron*, 585 N.Y.S.2d at 476 ("In a claim for indemnification a duty must exist between
the third-party defendant and the primary plaintiff."); *Serv. Sign Erectors Co. v. Allied Outdoor*

*Adver., Inc.*, 573 N.Y.S.2d 513, 514 (App. Div. 1991) ("[S]uccessful assertion of [the right of common-law indemnification] requires that the primary obligor and the indemnitor are *each* subject to a duty to an injury party.  The rule does not apply where the alleged indemnitor is not independently or co-extensively liable to the injured party." (emphasis added)).  While it is true that there is no directly on-point authority from the New York Court of Appeals on this issue, "[t]he holding of 'an intermediate appellate state court . . . is not to be disregarded by a federal court unless [the federal court] is convinced by other persuasive data that the highest court of the state would decide otherwise.'"  *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000) (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)).  *Waldorf Steel* and related cases represent the best view of the law of New York on this issue, and WDF points to no "persuasive data" to indicate that the New York Court of Appeals would hold otherwise.

Applying the law of *Waldorf Steel* to this case is straightforward.  WDF, the general contractor here, is in the position equivalent to Trocom, the general contractor there.  The SCA in turn plays the role of the DOT in *Waldorf Steel*, and Cavalry is similarly situated to Waldorf Steel, the plaintiff and subcontractor.  As in *Waldorf Steel*, the subcontractor plaintiff is owed money from the general contractor for work the subcontractor performed at the general contractor's direction.  Also as in *Waldorf Steel*, the general contractor has cross-claimed against the property owner for these damages under a theory of common-law indemnification.  With those relevant details the same, so too is the outcome: the SCA is not liable on a theory of common-law indemnification because "[the SCA] owed no duty directly to [Cavalry] upon which such an indemnification claim could be based."  *Waldorf Steel*, 664 N.Y.S.2d at 328.

In response, WDF offers two arguments, neither of which carries the day.  First, after citing general indemnity principles without reference to *Waldorf Steel* and related cases, WDF

17

states that, "WDF properly seeks common law indemnity against the SCA.  The scope of the Change Order Work to be performed was the same under Cavalry/WDF's as that required under the SCA/WDF's contracts and the obligation to pay for the additional work was that of the SCA, who received the sole benefit from the performance of and accepted such work."  (Appellee Br. 5–6.)  The paragraph has no citations to any New York caselaw.  Instead, this passage represents the same intuitive, we-deserve-indemnity-because-it's-fair argument given in the bankruptcy court.  While this view is certainly understandable, the argument is untethered from the relevant caselaw, so the Court finds it unpersuasive.

Second, engaging somewhat more directly with the adverse caselaw, WDF contends that there was, in fact, a duty running from the SCA to Cavalry that creates a basis for the SCA's common-law indemnification of WDF.  (Appellee Br. 16–17.)  In particular, WDF claims that the SCA is directly liable to Cavalry based on either a theory of unjust enrichment or provisions of New York Lien Law Article 3-A.  (Appellee Br. 17.)  But, if the SCA really did owe such duties to Cavalry, then one wonders why Cavalry never brought any claims under Article 3-A, and why Cavalry later dropped all of the unjust enrichment claims it did initially plead.  (*See* Am. Compl. (Adv. Proceeding Dkt. No. 11) (containing no claims under Article 3-A); Reply Br. 8 (noting that Cavalry "abandoned" its unjust enrichment claims).)  Moreover, WDF spends the bulk of its time in that section of its brief describing at length the principle that any applicable statute of limitations that bars a contractual action between WDF and the SCA "serves as no bar to WDF's cross-claim for indemnity."  (Appellee Br. 19.)

That legal principle is fine as far as it goes; unfortunately for WDF, it does not go very far at all.  That is because the relevant question is not whether a statute of limitations bars any viable claim for indemnity; rather, the relevant question is whether WDF has a viable legal claim

for common-law indemnity in the first place.  As explained above, WDF has no such viable

claim; as the SCA notes in its Reply Brief, "WDF fails to cite a single case in which a claim for

indemnity by a general contractor against the owner was upheld based solely on the theory of

common law indemnification."  (Reply Br. 8.)

In any event, WDF has not shown that the SCA owes any legal duty to Cavalry that is

cognizable by this Court.  WDF's main argument is that the SCA was unjustly enriched because

the "only party that had benefitted as a result of the Change Order Work performed by Cavalry

pursuant to the direction of the SCA, was the SCA."  (Appellee Br. 10.)  But in its own brief,

WDF acknowledges that it did not plead any cause of action for unjust enrichment; it was only

*Cavalry* that did so — and then, as mentioned, Cavalry eventually abandoned these claims.  (*See*

Appellee Br. 1 (noting that "Cavalry alleged causes of action for unjust enrichment").)  On the

merits, while WDF's brief cites only cases describing the general principle of unjust enrichment,

more specific New York caselaw holds that the SCA, as the property owner, would not be liable

to Cavalry, the subcontractor, on a theory of unjust enrichment in these circumstances.  *See*

*Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club, Inc.*, 549 N.Y.S.2d 57, 59

(App. Div. 1989) ("[I]t is a firmly established principle that a property owner who contracts with

a general contractor does not become liable to a subcontractor on a quasi-contract [or unjust

enrichment] theory unless [the owner] expressly consents to pay for the subcontractor's

performance.  The owner's mere consent to and acceptance of improvements placed on his

property by the subcontractor, without more, does not render it liable to the subcontractor."

(internal citation omitted)); *Danica Plumbing & Heating LLC v. Amoco Const. Corp.*, No.

8994/07, 2008 WL 498630, at *4 (Sup. Ct. Feb. 6, 2008) ("'Where there is an express contract,

as here, between the general contractor and the subcontractor, the owner of the subject premises

may not be held directly liable to the subcontractor on a theory of implied or quasi-contract, unless [the owner] has in fact [expressly] assented to such an obligation; the mere fact that [the owner] has consented to the improvements provided by the subcontractor and accepted their benefit does not render [the owner] liable to the subcontractor, *whose sole remedy lies against the general contractor*.'" (quoting *Contelmo's Sand & Gravel, Inc. v. J&J Milano, Inc.*, 467 N.Y.S.2d 55, 57 (App. Div. 1983)) (emphasis added) (second alteration in original))).

Next, WDF claims that the SCA owes a duty to Cavalry on the basis of a statutory trust created pursuant to Lien Law Article 3-A. (Appellee Br. 12–14.) "Article 3-A establishes a tier system of trusts, beginning with a trust of which the owner is trustee, followed by a trust of which the contractor is trustee, followed by a trust of which a subcontractor of the contractor is trustee, and so on, indefinitely. Each such trust has its own class of beneficiaries." Robert H. Bowmar, 34 *N.Y. Prac., Mechanics' Liens in New York* § 14:1 (updated July 2012). WDF contends that unpaid funds earned by WDF and withheld by the SCA are assets of WDF's contractor's trust, and that Cavalry is authorized by the Lien Law to maintain an action against the SCA to "recover any assets of the trust that are due or . . . become due from the SCA to WDF." (Appellee Br. 13.)

This argument fails. First, WDF did not raise it below, and, absent exceptions not applicable here, reviewing courts do not address arguments not pressed below. *See Best Payphones, Inc. v. Manhattan Telecomms. Corp.* (*In re Best Payphones, Inc.*), 432 B.R. 46, 60 (S.D.N.Y. 2010) ("Because this issue was not raised below, it has been waived and will not be considered by this Court."); *see also Lionel*, 29 F.3d at 92 (noting that the "general rule" is that reviewing courts do not address arguments not raised below). Second, on the merits, New York cases show that Cavalry could not maintain such a cause of action because "[t]he payments

which were withheld by the SCA do not constitute assets of a Lien Law article 3-A trust." *Avon Elec. Supplies, Inc. v. Christ Gatzonis Elec. Contractors, Inc.*, 652 N.Y.S.2d 72, 73 (App. Div. 1997); *see also Interel Envt'l Techs., Inc. v. United Jersey Bank*, 894 F. Supp. 623, 634 (E.D.N.Y. 1995) ("It is well settled under New York state law that before funds for construction for realty become trust assets under Article 3-A, they must be paid — that is received — by the owner of property or the contractor."); *Palmer Const., Inc. v. Hines*, 584 N.Y.S.2d 271, 273 (Sup. Ct. 1992) ("Until the contractor actually receives funds 'there is neither a trust *res* or a trust.'" (quoting *Tri-City Elec. Co. v. People*, 468 N.Y.S.2d 283, 288 (1983))).[7]  Thus, the factual predicate for an Article 3-A claim has not been established, and this argument fails.

* * *

Although it was initially unclear whether WDF was also asserting a claim for breach of contract, WDF later clarified that it was proceeding *only* on a theory of common-law indemnification.  (*See* Nov. 28, 2008 Tr. 13 (Counsel for WDF: "Judge, the claim is, if the claim were for breach of contract, perhaps [the SCA] would have something, but the claim is for common law indemnification."); *id.* at 18 (Counsel for WDF: "[A] cause of action for common law indemnification, which is the only cause of action we're dealing with in this motion . . . .").)[8]

_____

[7] Additionally, the fact that this claim has been raised for the first time on appeal makes it difficult for this Court to tell whether *other* requirements of the Lien Law have been met such that a viable claim really would lie under Lien Law Article 3-A.  For instance, authority cited by WDF states that the Lien Law "imposes duties upon trustees in the operation of the trust.  A statutory trustee must maintain books and records of the trust including entries for trust assets receivable, trust accounts payable, trust funds received and trust payments made with trust assets, and make those records available for inspection by beneficiaries." *Aspro Mech. Contracting, Inc. v. Fleet Bank*, *N.A.*, 805 N.E.2d 1037, 1039 (N.Y. 2004) (citing N.Y. Lien Law §§ 75, 76).  But there is nothing in the record here that reveals whether WDF followed these provisions.

[8] Though the bankruptcy court did state that it would have jurisdiction over certain contract claims brought by WDF against the SCA, (*see* Order ¶ 5), it is not clear what relevance that holding has given WDF's clear disavowels of its theory of recovery under contract law.

21

Because the Court reverses on the sole theory of liability advanced by WDF, the SCA is entitled

to judgment against WDF on all of WDF's indemnity cross-claims without the need for further

proceedings to advance any alternative theories of liability.

D. The Lien Foreclosure Actions

In the bankruptcy court, the SCA asserted that the liens pertaining to I.S. 84 (in the

amount of $831,299.59) and P.S. 4 (in the amount of $382,295.30) were discharged and that

"therefore the SCA is not the necessary or proper party in a foreclosure action of these two

liens."  (Adv. Proceeding Dkt. No. 102 at 1.)  The SCA moved to dismiss the lien foreclosure

action on P.S. 4 for this reason, and renewed its motion at trial with respect to both P.S. 4 and

I.S. 84, but those motions were denied.  (Appellant Br. 8.)  In the same order that decided

WDF's indemnity claims, Judge Hardin found in Cavalry's favor on the lien foreclosure claims.

(Order  ¶¶ 34, 44.)  The SCA was held jointly and severally liable to Cavalry for $74,750.98 on

the I.S. 84 lien foreclosure claim and for $284,559.41 on the P.S. 4 lien foreclosure claim.  (*Id.*)

On appeal, the SCA argues here, as it did below, that the liens on I.S. 84 and P.S. 4 had

been bonded and discharged and, therefore, they could not be enforced against the SCA in

Cavalry's foreclosure action.[9]  (Appellant Br. 9–10.)  The SCA further argues that both WDF

and Cavalry have acknowledged that the liens were bonded and discharged.  (Appellant Br. 25.)

In response, WDF acknowledges the existence of lien discharge bonds, (Appellee Br. 3 ("WDF

---

[9] Concerned that WDF and the SCA were asking the Court to determine the validity of
Cavalry's foreclosure action without Cavalry's input, the Court sought Cavalry's response to
these arguments.  (Order (Dec. 10, 2009) (Dkt. No. 14).)  Cavalry responded that its position was
"that it 'has no dog in the fight' between the SCA and WDF in the 09-CV-5123 appeal," and the
Court takes it at its word.  (Letter from John J.P. Krol, Esq., to Honorable Kenneth M. Karas,
United States District Judge (Dec. 18, 2009) (Dkt. No. 15) 2.)

filed lien discharge bonds on P.S. 4 and I.S. 84 with the SCA.")), but WDF argues that the bonds did not discharge the liens because they were not served upon Cavalry.  (Appellee Br. 6.)[10]

This dispute is rather puzzling because, as the SCA points out, at one point the Parties, including Cavalry and WDF, all acknowledged that the SCA should no longer be a party, at least on the issue of the I.S. 84 lien foreclosure action.  At the trial, Judge Hardin asked: "[L]iability on the lien is discharged by the posting of a bond; is that right?" (Nov. 10, 2008 Tr. 26.)  To which WDF's counsel responded: "Yes. . . . I mean the SCA is no longer a party on the lien foreclosure, but our claim over, we still have a claim over for common law indemnification.  So the SCA may be right on that issue, but it's somewhat irrelevant because we're going to — we have a claim for indemnification."  (*Id.*; *see also id.* at 28 (counsel for Cavalry noting that "we would concede that the SCA is no longer a party to [the lien foreclosure] portion of the argument on 84, but of course we know that we have, they still have the indemnification argument"); *id.* at 36 (the bankruptcy court stating that "the existence of the posting of a bond may eliminate the lien, but it doesn't eliminate the liability which the lien was intended to secure").)

---

[10] WDF also argues that the SCA has taken the position that the liens were invalid. (Appellee Br. 6.)  To make this argument, WDF relies on a statement attributed to the SCA's counsel: "I just wanted to clarify that the SCA comes into the courtroom and argues that the bonds are valid but outside of the courtroom is not treating them as valid.  That's all I wanted to say."  (Apr. 7, 2009 Tr. 62.)  The SCA responds by saying that the transcript misattributes the statement to its counsel and that the comment was made by WDF's counsel.  (Reply Br. 10 n.2.) Obviously, the Court cannot be certain who said what, but it would be unusual for counsel to so brazenly inform the court that she was acting dishonestly and for the court not to respond.  In fact, the court did respond by asking the SCA's counsel if she "t[ook] issue with what [WDF's counsel] just said," which is strange if, as reflected on the transcript, the only thing WDF's counsel had said was that she was not planning to come to a future conference.  (Apr. 7, 2009 Tr. 62.)  The dialogue that follows also suggests that it was WDF's counsel who made the comment, not the SCA's.  (*Id.* at 63.)  Regardless, the Court is confident that if the SCA is wilfully misleading this Court or the bankruptcy court or failing to live up to their obligations in some other way, then WDF will seek appropriate remedies.

WDF also claims now that the discharge bonds were not properly served upon Cavalry, and yet it was *WDF* who signed and filed the discharge bonds.  (Appellee Br. 3; Adv. Proceeding Dkt. No. 102, Exs. A-1, B-1 (discharge bonds signed by WDF).)  This is also clear from the transcript.  "We put up the bond," said counsel for WDF, in reference to I.S. 84.  (Nov. 10, 2008 Tr. 30.)  "Oh, you put up the bond?" responded the court.  (*Id.*)  "Correct," said counsel.  (*Id.*)  Then, the court asked WDF's counsel, "You're still on the hook for the bond?"  (*Id.*)  Again, WDF responded: "Yes."  (*Id.*)

It is unclear, given these exchanges, how the SCA was nonetheless held liable on these claims in the bankruptcy court's order.  Ultimately, the Court reverses the bankruptcy court on this point, because, as shown by these exchanges and acknowledgments, the SCA concededly had discharged its liability and was not a proper party.

The law on this issue is essentially undisputed.  A lien from the state or a public corporation may be discharged by an appropriate bond that becomes effective when filed with the state or public corporation and served upon the adverse party, in this case, Cavalry.  N.Y. Lien Law § 21(5).  Once such a bond is executed, the state or public corporation — here, the SCA — is no longer a necessary party in the lien foreclosure action.  N.Y. Lien Law § 44-b; *see also Maverick Const. Servs., LLC v. Desford Partners, LLC*, No. 501960/12, 2013 WL 1490128, at *5 (Sup. Ct. Mar. 20, 2013) (dismissing a complaint by a subcontractor against a property owner where the lien had been bonded because "once the lien discharge bond has been filed, there no longer exists any claim against the property").  Here, as mentioned, it is undisputed that such a bond was created for both projects.  (Adv. Proceeding Dkt. No. 102, Exs. A-1, B-1 (discharge bonds for P.S. 4 and I.S. 84).)  Thus, the SCA was not a proper party to the lien foreclosure actions.

WDF's first argument against this conclusion is that "[t]here was no proof before the Bankruptcy Court that the lien discharge bonds were served upon Cavalry." (Appellee Br. 6.) As mentioned, though, Cavalry clearly knew about the liens, and WDF was the party that could and should have served Cavalry. (Nov. 10, 2008 Tr. 28, 30; Appellee Br. 3.) With regard to the P.S. 4 bond, Cavalry's counsel acknowledged service, stating, "[t]his bond was filed with the SCA at the end of March of 2008. I — and then I was served with it by [counsel for WDF]." (Apr. 7, 2009 Tr. 30.) With regard to I.S. 84, there is in the record a notarized, sworn certificate of service affirming that Cavalry was served with the discharge bond. (Adv. Proceeding Dkt. No. 102, Ex. B-1, at 7). Thus, there is clear proof that Cavalry was served.

WDF's second argument is that the existence of the bond "did not change the relationship of the Parties." (Appellee Br. 8.) But that is not accurate, according to the New York courts. As the Appellate Division has stated:

> When a lien is discharged by the filing of an undertaking, the lien is shifted to the undertaking and . . . the action, although ostensibly one to foreclose the lien, is actually one to test the validity of the lien had it not been discharged, and, if valid to obtain a judgment against the undertaking rather than a judgment of foreclosure against the property.

*Lindt & Sprungli USA, Inc. v. PR Painting Corp.*, 740 N.Y.S.2d 369, 370 (App. Div. 2002) (internal citations omitted); *see also Arred Elec. Contracting Corp. v. Herbert Constr. Corp.* (*In re Arred Elec. Contracting Corp.*), 106 B.R. 353, 357 (Bankr. S.D.N.Y. 1989) (stating that once a lien is discharged by a bond, "the lienor ceases to have any interest in the real property"); *Benson Park Assocs. LLC v. Mega Constr. Corp.*, 860 N.Y.S.2d 873, 878 (Sup. Ct. 2008) (stating that an action to enforce a discharged lien procures a judgment against the undertaking that discharged it, not against the real estate that was the subject of the original lien). These cases stand for the proposition that once a lien is discharged, the holder of the original lien is no

longer a proper party to an enforcement action. Thus, the SCA was not a proper party.

Therefore, regardless whether the SCA should have been entirely dismissed from the suit, it was not appropriate to award damages against the SCA, as Cavalry had no direct claims against the SCA and the judgment should have been awarded against the bond. The Order of the Bankruptcy Court awarding damages against the SCA on the lien foreclosure claims relevant to P.S. 4 and I.S. 84 is therefore vacated. The bankruptcy court's judgment on those claims is undisturbed, and unexamined, with regard to the liability of any other party.[11]

### III. Conclusion

For the reasons stated herein, the Order of the Bankruptcy Court is reversed in part and vacated in part. This case is remanded to the Bankruptcy Court for proceedings consistent with this Opinion. The Clerk of the Court is respectfully requested to close this case.

SO ORDERED.

Dated:        May *13* , 2013
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[11] Given the Court's disposition of this argument, it is not necessary for the Court to determine whether the bankruptcy court should have abstained in light of WDF's state court action.

26